In the Matter of SAMUEL HANGER, an Infant, by BUREL GOMILLION, His Guardian ad Litem, Respondent, *v.* STATE UNIVERSITY OF NEW YORK AT BINGHAMTON, Appellant.

Third Department, June 29, 1972.

*Louis J. Lefkowitz, Attorney-General (John Q. Driscoll* and *Ruth Kessler Toch* of counsel), for appellant.

*James C. Collins* for respondent.

SWEENEY, J.   This is an appeal from a judgment of the Supreme Court at Special Term, entered July 6, 1971 in Broome County, in a proceeding brought pursuant to CPLR article 78 which granted the petition and determined that petitioner should be reinstated as a student at the State University of New York at Binghamton and that all disciplinary proceedings against him be canceled.

On March 24, 1971 the infant petitioner engaged in a heated intramural basketball game held in the gym at the State University of New York at Binghamton.   It is alleged in the petition that after the game he took part in assaulting and injuring several of the players on the opposing team, an official and other students.   On March 26, 1971 the president of the institution charged petitioner with a violation of the Rules and Regulations for the Maintenance of Public Order. (8 NYCRR Part 535 *et seq.*)   At the same time petitioner was suspended from the university pending a hearing.   The instant proceeding was commenced and, after a final determination suspending petitioner had been issued, Special Term held that the Rules and Regulations for the Maintenance of Public Order were applicable only to campus disorders which involve militant students demonstrating against National policy, racial discrimination, the Vietnam War, etc., and determined that the president had exceeded his jurisdiction.

The sole issue involved is whether the Rules and Regulations of the Board of Trustees of the State University of the State of New York and those of the State University of New York at Binghamton apply to the circumstances of the instant case. It is appellant's contention that they are applicable to all student disciplinary matters, including the present one. Undoubtedly the widely publicized campus disorders of 1969 provoked the enactment of section 6450 of the Education Law requiring the Board of Trustees to promulgate a set of comprehensive rules and regulations to govern conduct on State campuses. Any individual institution, however, was given the right to supplement those rules and regulations by additional rules not inconsistent therewith. (8 NYCRR 535.2.) Accordingly, appellant adopted supplemental rules. (8 NYCRR Part 538 *et seq.*) There is nothing in the language of the rules adopted by either the Board of Trustees or appellant which restricts their application to large campus disorders. Petitioner was charged specifically with engaging in activities stated in Rule (3) of section 538.1 as '' potentially prejudicial to the maintenance of public order ''. (8 NYCRR 538.1 [b].) The purpose clause of both sections 535 and 538 states that the rules are enacted '' to maintain the public order ''. Section 535.3 governs any situation in which a student, either singly or in concert with others, causes a breach of order on campus. The incident in question could be considered, as far as campus life is concerned, a breach of order on campus. Each college or university must possess the authority to maintain law and order on its campus and to discipline any violator. (*Matter of Schuyler* v. *State Univ. of N. Y. at Albany*, 31 A D 2d 273.) It is our conclusion that such rules and regulations are applicable to the instant controversy and, consequently, the president was acting within his authority when he suspended petitioner.

The judgment should be reversed, on the law and the facts, and petition dismissed.

HERLIHY, P. J., STALEY, JR., KANE and REYNOLDS, JJ., concur.

Judgment reversed, on the law and the facts, and petition dismissed, without costs.